v. Bank of America May it please the Court, Counsel. I'm Jim Helmer from Cincinnati. I'm here on behalf of Mr. Hendrickson, the relator in a false claims act case. I'd like to start by talking a little bit about some regulations that are involved in this case. Nearly all federal entitlement money travels through the automated clearinghouse. This includes payments to our soldiers. This includes benefits paid by the Department of Veterans Affairs. It includes Social Security payments. It includes the paychecks for this court and its staff. To do this, we have to abide by these regulations. And they govern the gatekeeper role that the banks are required to perform to handle these vast sums of federal funds. It's a voluntary program. The banks elect to handle this money, and by doing so, they form a contract with the United States to abide by those regulations. Now, everybody in this courtroom is aware of Treasury regulations that are so dense that they're obtuse. That's not the case in this lawsuit. Very simple regulation. If you're a bank and you accept federal funds, and your customer dies, and you know your customer dies, you got to stop taking the money, period. The regulations go further and make the banks fully liable if they do take any money after they're aware their customer has passed away. And finally, the banks are also required to pay attention to a document called a DNE, death notification entry. Those are issued by the Social Security Administration, and of some relevance to this court, that didn't start until 1994. Some of the disclosures we're going to talk about, in fact, almost all of them, occurred prior to DNEs even existing in 1994. So with that background, I want to talk about the two legal issues that the district court seized upon to dismiss this lawsuit at the pleading stage. To do that, I want to start with the public disclosure bar found in section 3730E4. But we have to go back in history to understand what that disclosure bar, why it's there, and what it's designed to do. Got to go back to World War II. In World War II, there were some enterprising citizens who were hanging around courthouses, and they would wait for the U.S. attorney or an attorney general to file an indictment against a defense contractor. They would then take that indictment, rip off the first page, and put a civil cover page for a False Claims Act case on that indictment. That was what's called a parasitic lawsuit. Congress, at the urging of Attorney General Francis Biddle, decided that that wasn't appropriate and enacted a new provision in the 1863 False Claims Act that provided if any government employee, any government employee, has any knowledge of the fraud, the suit can't be brought by a citizen. Key Tam suit can't be brought. That was called the Any Government Knowledge Bar. For 40 years, that was the law in this country, and it killed every False Claims Act case ever brought. Wiped them out, because you could always find some government employee who knew something about the fraud. You're in control of your time, but you're about half through, and you've sort of walked us, you know, through where we started, so you may run out of time if you don't launch into the issue part. Thank you. Thank you, Your Honor. What I wanted to say was by the mid-80s, Congress realized that this had to change. We had to incentivize citizens to bring these suits, and finding any government employee that could bar them was not a good idea, so the Public Disclosure Bar was enacted. It doesn't require the government to have any knowledge at all. In fact, that was repealed. Now, there has to be substantially the same allegations in the relator's complaint as in the disclosure, and this lawsuit, therefore, is neither parasitic, nor does it contain substantially similar allegations to any of the six disclosures identified by the district court. None of the disclosures of the six, none of the six disclosures ever reference banks' contractual obligations under those regulations to ensure that payments are not made when they know their customer is dead. None of the disclosures allege fraud by any bank or name any of these banks. Four of the disclosures occurred more than 30 years ago, with all due respect, Your Honor, prior to D&Es even being in the regulations. None of them reference the gatekeeper role that these regulations require the banks to perform. None of them put the government on the trail of fraud, none of them, none of the six. Therefore, they can't be public disclosures that bar this lawsuit. Now, this court will perform a de novo review of each of those six documents, and what I just said, you're going to find missing in any of those six disclosures, or all of them combined. They're not there. So the second issue that the district judge bounced this case on was another provision of the False Claims Act that was amended in 2009. That's the Reverse False Claims Act provision. It's found in 3729A1G. G as in George. Now, this court has spoken on the 9B requirements for False Claims Act cases, principally in the case called Grubbs v. Cantiganti. But interestingly, the Grubbs v. Cantiganti case was not a Reverse False Claims Act case. In fact, it was decided 30 days before President Obama signed the amendments that added the provision that we want to talk about. And that provision is that if you have an obligation to pay money to the United States and you knowingly avoid paying that money to the United States, you're liable under this new provision of the False Claims Act. You agree Rule 9B applies because it's a fraud case, right? Yes, sir. You have to have particularity. So just one example, some particularity, it's, you know, who, what, all those things. Let's just take one of those, timing. When did the scheme to ignore all these federal regulations and requirements, when did that scheme start at Wells Fargo? I don't know that I need to plead when it started at Wells Fargo. I think I need to plead at a date when it occurred at Wells Fargo. Okay, when did it start there? I did plead a date when it occurred at Wells Fargo in paragraphs. Well, you pled when some money was not sent back. But when did they come up? The particularity has to be about the fraudulent scheme. So who at Wells Fargo started the scheme? Whose idea was it? When did they start it? That's what you typically see. That's what you typically see, Your Honor, you're correct. On this date, this vice president had a meeting and said, we're going to do it this way, you know, and here's, let's, let's scam the government this way. And if this were a typical False Claims Act case, I wouldn't have any difficulty with your statement, Your Honor. But what's different is this is a new provision of the False Claims Act in which fraud is not mentioned. What it says is, if you knowingly or improperly avoid or decrease an obligation to pay money, fraud's not there. You have an obligate, the key phrase is obligation. Well, if it's not fraud, then you're saying Rule 9 doesn't apply because Rule 9 only applies to fraud. That's correct, Your Honor. Okay, I thought, I didn't, did you ever, did you argue below or to us that Rule 9 doesn't even apply? I did not argue that before you, Your Honor. I did argue before you that the language contains only three elements, the elements being an obligation, which we just already talked about, and the bank's failure to abide by that obligation, which we, which we pled. You don't think there are three? We gave 23 examples up. There doesn't have to be intent to defraud the government? No, Your Honor. Under the reverse claim? No, the statute specifically says that at 3729B1B requires no proof of its specific intent to defraud, B1B. So what does it require? It requires an obligation, which the regulations provide, and it requires that the banks fail to repay money to the government, which we provided 23 specific examples, including the identification of the customer who died, the VA claim number, the date of death, the date of the last Social Security payment, and the amount of money that the banks wrongfully withheld. Let me back up just so I make sure I understand what you were saying. I mean, in your summary of the argument, in number two, you talk about 9B, and you say the relator's pleadings meets this standard, so you seem to have alleged 9B was applicable, but what you pled met the standard. So are you saying, what are you saying today? Are you saying 9B isn't applicable because of everything else you said, or are you saying the pleadings that you've laid out do connect to a fraudulent claim and are specific enough? I think I'm saying two things, Your Honor. I'm thinking that I'm saying that under 9B analysis, which we analyzed in the brief that you're holding, we do satisfy the 9B analysis of the Grubbs v. Conigotti case by pleading the scheme, but I'm also suggesting to this Court, as an officer of this Court, that the statute that you're looking at doesn't have fraud in it. And so before, it has fraud in the first section, but not in the section that we're referencing in this lawsuit, the part that was amended in 2010. Your brief, I mean, page 28, which I think is what the Chief was just looking at, you can satisfy Rule B, there's a fraudulent scheme we allege, fraudulent conduct. Now there doesn't have to be fraud. I mean, it just changed the whole complexion of the case. Well, Your Honor, I know that this Court pays very particular attention to the language of the statute, and I didn't want to leave the Court without mentioning that fraud is not there. There are scores of allegations describing the bank's fraudulent scheme. That's your brief at 29. Yes, sir. We stand by that. There are scores of such allegations. The three elements are obligation, which we've talked about, the failure to repay money, which we've given 23 examples of. And these examples range from 14 months, 1.2 years, to 191 months, almost 16 years, the banks failed in their obligation to repay this money. Sixteen years. So that gets us to the knowing part of the element, the element that Canegani says we should take a look at. And knowing includes reckless conduct, includes not satisfying the standards that should apply by deliberately ignoring facts. When you don't return the government's money for over 15 years, that certainly pleads sufficiently that there's recklessness involved. We should satisfy the knowing requirement. Even if 9b does apply, Judge Costa, under the 9b language, knowing doesn't have to be played with particularity. It can be played generally, which we did. Are there any of these reverse false claim cases that have, cases that have decided whether 9b applies? Has this argument you made been, I mean, forgetting the fact it wasn't made until today, but has it been addressed by any court? Your Honor, there is a one circuit that has referenced it in a concurring opinion. I believe it was out west, either 10th or 9th. I don't have the case with me. I can provide it to the court. But it was not, to answer your question, no, it was not the principal decision of any court that I'm aware of. Those are the two reasons for why the court dismissed the case, that there were six documents she thought were parasitic that our guy copied, our guy relied upon, that are not substantially the same as what's in this complaint. You'll see that when you study the complaint and you compare it with those six documents. And the Reverse False Claims Act provision, I understand this is some new ground. I wish I had made a better argument to the trial court. We argued for quite a while in front of her. And we did submit some supplemental briefing at her request. But as I said, as an officer of the court, I don't think that it's fair not to point out to this court that the language of this statute does not fit neatly with a 9B situation. But you didn't just discover that today. I mean, assuming that's an argument, I mean, anyway, it is what it is. Fair enough, Your Honor. All right, Ms. Thelma. I want to be clear on this. Are you conceding that this entire obligation argument is being raised for the first time at oral argument? Yes, sir. Okay. All right, Ms. Thelma, we got you. Ms. Coberly, is that correct? You said Coberly or Carberly? Coberly, Mr. Chairman. This ma'am, you're up. May it please the Court, I am Linda Coberly. I represent all the defendants in this case. This is a very straightforward dismissal under very clear precedent from this court. Under this court's cases in Grubbs and Jamison and Little, there are at least two independently fatal problems with this complaint. And to get relief on appeal, Hendrickson would have to overcome both of them, and he hasn't overcome either. Now, I'm not sure how to address an at-oral argument. What I can say is that the brief concedes that the standard for pleading was correctly described by the district court on page 23. The appellant says, however, after citing the correct standard for 9b, the district court failed to consider the full scope of the allegation. So the argument that was made, obviously, in the briefs is that Rule 9b was and something that is completely inconsistent with this court's precedents. I did not hear counsel to be saying here today that a reverse false claim is unique in not being a fraud claim. What I heard him to say was that the False Claims Act itself, the False Claims Act in total, does not require fraud, so therefore, Rule 9b doesn't apply. Well, that would require overruling all of this court's 9b cases in the context of the False Claims Act, including Grubbs, which explains that this court applies Rule 9b with bite and without apology. The theory that Hendrickson raises here is that 15 different banks, a vast swath of the banking industry, each knowingly failed to return federal benefits payments that they had an obligation to that were received after notice that the recipient was dead. So the critical thing is not only that notice was received, it's when notice was received in relation to the payments themselves. But he hasn't described a single instance where that ever happened. He hasn't identified a single person for whom a bank actually received a notice of death. He hasn't said when that notice was received relative to the payment. He hasn't alleged that that conduct was anything other than a regulatory violation. And this is where the standard for pleading knowledge really matters. The Supreme Court said in Escobar that the False Claims Act is not to govern when we're talking about a simple regulatory violation. And what you just heard in this opening argument was an explanation of the scheme and the regulatory scheme and so forth. All he's ever argued is that the regulations were violated. And I would submit he hasn't even adequately alleged that they were violated, because as he concedes, the critical triggering event to trigger the obligation to return money is the receipt of notice before the payment. But this complaint doesn't say when the notice came. It doesn't say whether the notice ever came. And it includes no factual allegations whatsoever that might suggest knowledge or recklessness or anything with respect to each of the 15 banks. The other important thing here, this total lack of specificity in this complaint, is also a problem under the public disclosure bar. Because under Jamison, we know that the facts in the public disclosures need only be as broad and as detailed as those in the relator's claim. Here, the district court found six instances, and we submit there are more, where a public source disclosed that a bank received money after receiving actual knowledge of death and did not immediately return it. There are at least six — at least six disclosures where that is disclosed. Those are the critical — But those all show that the bank had actual government knowledge from this — from this electronic notice? No. They had something even better. They had, like, someone called them up. Family member. A family member said there is — the person is dead. In one — in one of the disclosures, the bank accounts have been inactive for years, which the court concluded was enough to put them on at least constructive knowledge that the person was dead. But in the other examples, a family member actually called up and said the person was dead. That is actually more specific than what this complaint says. It seems like it's — that would mean that any fraud in this area would be publicly — it's almost like saying, you know, there's reports every day that Medicare is getting ripped off, right? So you can never bring a false claims act because everyone knows Medicare is getting ripped off. But that — here, we just know the government's paying out all this money that they shouldn't be, and banks are letting it happen. It just seems like it would eliminate — it would be a public disclosure bar to any fraud allegations in this area. No, it's a public disclosure bar to the fraud allegations in this complaint. And that's the critical thing. What this complaint does is it just alleges, at most, a regulatory violation. It takes the Social Security manual, which says that Social Security is supposed to promptly provide notice of death. It makes an assumption — and he conceded in the district court that it was an assumption — that the Social Security administration consistently follows those procedures right away. And then he couples that with the fact, which we know from lots of public sources, that money ends up in the accounts of dead people. That's all this complaint alleges. But let's say it was more specific. I get your point there. If it was — And it says a corporate vice president at one of these banks had a meeting and said, you know, we're going to ignore — no one look at these Social Security notices. You'd still be saying it's — they had all the specifics you needed. You'd still be saying it's publicly — there's a public disclosure because people knew banks were letting this money keep coming in after people died. I wouldn't necessarily, Your Honor, because that's grubs. What you've just described is grubs, right? Where there was a — there was a meeting and the time and place and manner of the meeting and people confessed that they were engaging in Medicare fraud. The question is whether the public disclosures disclose the scheme as alleged in the complaint. Here, all the complaint does is allege at most a regulatory violation. So, yes, I would say — None of those six examples the district court gave do talk about this regulation being violated. Well, the first one — Some of them predate the Social Security notices, electronic notices. Actually, the first disclosure, Your Honor, the 1987 banking circular, it does — all it predates is the DNE. The DNE didn't exist then. But that's the core of their — as you describe it, a regulatory violation. But the DNE says the Treasury regulations are being violated because you are receiving money and you're holding it in an account rather than returning it right away. And that is the gist of the — that is the claim. That is the core of the theory. And he says it all over his brief on appeal. What is the specifics? What are the specifics of this scheme? Keeping money after the notice. That's the specifics of the scheme. And that was described in that — in that banking circular as well as in all of the other public disclosures. There's — just to speak to the knowledge issue, though, under this theory, under Hendrickson's theory, the knowledge has to be knowledge of an obligation to return the money, right? So it's not just that he has to plead that notice came before the payment came. He also has to plead that the obligation happened and there was a knowing violation of the regulation. And he hasn't pleaded that either. And knowledge does have to be pleaded at least plausibly, because it does at least require factual allegations consistent with Twombly and Iqbal. Nothing in Section 21010, which is the relevant regulation, requires an immediate return of the money. The Green Book says it does in one place, but in another place it says something different. In another place it says that the bank doesn't have to wait for a reclamation process but can immediately return all subsequent post-death payments. And the Social Security Administration guidance says the bank has the option of waiting for a reclamation before returning the funds to the agency. So it's not even clear if you — even if we knew that for a particular person notice was received and then a payment was received and the money wasn't immediately returned and the complaint doesn't plead even that much. Even if it did, all we would have is potentially a disagreement about what the regulation means. And we know from this Court's cases that a false claims act claim requires more than just a regulatory violation, a disagreement about what the regulations mean. It's not clear if you look at this regulation, which does not say immediately return. The immediately return comes from the Green Book, which is self-contradictory on the subject. So what you see in all these examples, in fact, that the complaint cites, many of those examples, there was a notice of reclamation issued and that notice of reclamation was complied with. Money was returned. But he doesn't plead how much the government asked for and the notice of reclamation. He doesn't plead how much should have been returned. He doesn't plead whether they did or did not limit their liability before returning the money. There's simply no basis, even from those examples, to conclude that there was a regulatory violation, much less a knowing regulatory violation, which is what you would need at least to have a false claims act claim here. Now, counsel mentioned a couple of times that this is all at the pleading stage, and certainly that's true. One thing I do want to point out, just in case, just because we're in the realm of departing from briefs and I just want to make sure I get this out there, the plaintiff conceded below he has no more specifics to provide. He didn't present an amended complaint in the He has not argued that the dismissal should have been without prejudice to leave to amend. None of that is before the court and it's too late to raise it now. If the court has no further questions, I would ask that it affirm the dismissal. Thank you. Thank you. I want to start with counsel's new argument about regulations and Escobar and point out that if you look at the False Claims Act's definitions, this is like poker. I'll take your new allegation and I'll take your new argument and raise you one. Go ahead. The definition of obligation is contained in 3729B3 and it specifically provides that an obligation means a duty arising from a regulation. That's what we're talking about here is this regulation 210.10. It's specifically covered by the False Claims Act because it is a regulation that provides an obligation to repay money to the and held onto in some cases for over a decade. Secondly, I never said in this court or before any court that the False Claims Act does not require 9B. I made that argument 25 years ago unsuccessfully. I haven't made it in 25 years and we do not make it in this case as Chief Judge pointed out from the brief. 9B does apply to False Claims Act cases. What I suggested is when you sit down to analyze the language of this statute, you may have some trouble finding why 9B applies at all to this case. That was all I would suggest. Counsel told you that there's 15 banks here and it's a swath of the banking industry. I'm not really sure what that means, but just so the record's clear, there are over 5500 banks in the United States with over 100,000 branches. So the fact that we sued 15 are because our client had specific information about those 15. He was blowing the whistle on identifying those 15 which is another point I want to make about the six publicly disclosed documents that are alleged in this case. None of them identify any of the banks that are sued here. None of them. That's something that again is going to have to be inferred if the idea is to say they're substantially similar to the allegations of this complaint. As far as the payment being the money being returned immediately, that's what the green book says. While counsel says there's a provision in there that kind of makes that iffy, that's not how I read that provision at all and that's not a decision that was made by the court below. I don't think it'll be a decision that you'll make in your de novo review when you look at that regulation. Very clear that this money is to be returned immediately. The green book is part of the regulation. It's issued by the Treasury Department and the regulation requires that it be complied with and it was not complied with here on the 23 examples that we provided to the court. Counsel is correct. We are not asking the court for leave to amend this complaint. We think we have met the pleading standards of Cannaganti and we think we have demonstrated there are not six public disclosures in combination or singly that should derail this case. We think that this case should proceed to focus discovery. By the way, the banks, not only do they not deny their obligation here, this is what they say in their brief. The regulations shift the burden of the debt beneficiary problem to the banks, making the banks liable for the total amount of all benefit payments after the death of a beneficiary. That's page 8 of the brief of the banks, of 15 banks. They acknowledge what these regs say. They acknowledge what their obligation is. They just have not lived up to abiding by that and as a result, the Veterans Affairs Department has lost a ton of revenue that could be employed in other fashions. That's a perfect way for the False Claims Act to be applied. We're not out in the extremes here. We're right in the center of what this act is trying to do and at the pleading stage, we should be allowed to continue. Thank you. Thank you, counsel. Thank you, counsel, on both sides for the briefing and argument. The case will be submitted.